# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. M-21- 683 -STE
a Black Samsung cellular telephone with SIM Card )
Number: 8901260075959160993 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the  Western  District of  Oklahoma , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Cristina Busbee*
Applicant's signature

CRISTINA BUSBEE, SPECIAL AGENT
Printed name and title

Sworn to before me and signed in my presence.

Date: **Dec 6, 2021**

City and state:  Lawton, Oklahoma

*Shon T. Erwin*
Judge's signature

SHON T. ERWIN, U.S. MAGISTRATE JUDGE
Printed name and title

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK SAMSUNG PHONE WITH SIM CARD NUMBER 8901260075959160993, CURRENTLY LOCATED IN SECURE EVIDENCE STORAGE AT THE HOMELAND SECURITY INVESTIGATIONS OKLAHOMA CITY PROPERTY ROOM | Case No. MJ-21-683_____ - STE |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Cristina Busbee, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— an electronic device, as further described in Attachment A hereto—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with Homeland Security Investigations ("HSI") and have been so employed since April 2019. I am presently assigned to the HSI office in Oklahoma City, Oklahoma (hereinafter referred to as HSI Oklahoma City).

3. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am authorized to conduct criminal investigations of violations of the laws of the United States and to execute warrants issued under the authority of the United States.

4. I have been involved in a wide variety of investigative matters. Among other things, I am responsible for conducting investigations into violations of federal criminal laws, including the smuggling of goods into the United States, aiding in unlawful manufacturing, possession, and distribution of controlled substances. I have received approximately 26 weeks of specialized training at the Federal Law Enforcement Training Center in the enforcement of federal laws. I have arrested, interviewed, and debriefed numerous individuals who have been involved with and have personal knowledge of smuggling goods into the United States, aiding in unlawful manufacturing, possession, and distribution of controlled substances, as well as, the amassing, spending, converting, transporting, distributing, laundering, and concealing of proceeds from criminal activity. I have testified in judicial proceedings concerning the prosecution for violations of laws related to the smuggling of contraband, including controlled substances. I have been the affiant of numerous federal search warrants, which I have used to further criminal investigations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit

is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is a black Samsung cellular phone with SIM Card number 89012600759591160993 (the "Device,") as further described in Attachment A. The Device is currently located in secure evidence storage at the Homeland Security Investigations office, 3625 NW 56th Street, Oklahoma City, OK 73112.

7. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8. The Device was seized during a traffic stop involving Steven TYE. TYE is under investigation by HSI for violations of 21 U.S.C. § 841, possession of methamphetamine and cocaine with intent to distribute, and 21 U.S.C. § 846, drug conspiracy.

9. On October 31, 2021, at approximately 0849 hours, Criminal Interdiction Team of Central Oklahoma (CITCO) Deputy Jason Hefley conducted a traffic stop of a black Chevy Tahoe bearing Arizona license plate BZA10C. The stop took place on I-40 eastbound in Oklahoma City, Oklahoma after Hefley observed the vehicle crossing the fog lines and making unsafe lane changes without indicating.

10. Deputy Hefley approached the passenger side front window and made contact with the driver, and sole occupant of the vehicle. Deputy Hefley asked for his drivers' license, and the man opened his wallet, showing a metal badge, which he said was for the fire department. He also provided a Michigan drivers license identifying himself as Steven TYE. Deputy Hefley noted that TYE's hands were shaking when he handed over his license.

11. Deputy Hefley asked TYE if the vehicle belonged to him and TYE stated that it was "his people's" car. TYE stated that he had flown to Las Vegas, Nevada to help cater an event for his boss that has a business in Atlanta, Georgia, and was driving back to Michigan.

12. Deputy Hefley asked TYE to have a seat in Deputy Hefley's vehicle with him while Deputy Hefley ran TYE's information. Deputy Hefley noticed that there was not any luggage in the vehicle except a small gym bag in the backseat and a retail bag in the back rear cargo area.

13. When outside of the vehicle, TYE put his arms out to his side. Deputy Hefley asked TYE if he could check him for weapons, and TYE indicated that he could. Deputy Hefley did a pat around TYE's waist and then TYE sat in Deputy Hefley's backseat.

14. Deputy Hefley engaged TYE in casual conversation while he ran law enforcement checks on him in the vehicle. TYE stated that he had retired through the Inkster Michigan Fire Department and now does catering part-time. Deputy Hefley noted

that TYE was talking an unusual amount and was unable to answer basic questions about his trip to Las Vegas.

15. TYE stated that the owner of the vehicle is Jessica CHAVEZ, but he had only met her one time. Deputy Hefley confirmed through his record checks that the vehicle had been registered to CHAVEZ on May 1, 2021 in Buckeye, AZ.

16. Deputy Hefley asked why TYE was driving back instead of flying, and TYE stated that his boss wanted him to drive the vehicle to Michigan because it would give him a chance to see his people. TYE stated he had stopped in Dallas to see his friend for a day. Deputy Hefley noted that this seemed suspicious given TYE was traveling on I-40 which does not lead from Dallas.

17. Deputy Hefley asked TYE how his boss was going to get the vehicle from Michigan. TYE stated that his boss has a warehouse in Michigan where he stores his equipment although his restaurant and business is in Atlanta.

18. Deputy Hefley asked TYE if there was anything illegal in the vehicle and TYE stated that there was not. Deputy Hefley asked if there was marijuana in the vehicle and TYE responded that there were no drugs in the vehicle.

19. Deputy Hefley asked TYE for consent to search his vehicle, and TYE responded, "Sure."

20. CITCO team member MSGT Wallace and MSGT Walsh arrived on scene with certified narcotics detection K-9, Sando. Sando conducted a free air sniff of the vehicle and positively alerted to the odor of narcotics.

21. During a search of the vehicle, MSGT Walsh noticed a brown paper in the door panel of the rear driver side door. Deputy Hefley was able to see a clear vacuum sealed package that appeared to contain some kind of contraband by looking through the front passenger door and was able to see that all four doors of the vehicle contained these packages. Deputy Hefley asked TYE what was in the packages and TYE stated that he did not know.

22. At this time, the vehicle and TYE were transported to the CITCO office for a secondary search and processing.

23. At the CITCO office, a secondary search of the vehicle revealed a total of 21 bundles of suspected methamphetamine weighing a total of approximately 23 pounds and five bundles of suspected cocaine weighing approximately 12 pounds. The bundles were found throughout the door panel cavities of the vehicle. Field tests were conducted and yielded positive results for both the methamphetamine and cocaine.

24. At the CITCO office, TYE was advised of his rights as per Miranda and signed a waiver in understanding of those rights. TYE stated that he had no knowledge of what was found in the vehicle and had been given the vehicle by his employer to drive back to Michigan. TYE identified his employer as Harondo EVANS and provided the phone number 989-909-0088 for EVANS.

25. TYE stated he was not feeling well and was taken to the hospital for further evaluation. Upon being cleared and released from the hospital, TYE was transported to the Oklahoma County Jail.

26.     While officers search the vehicle, TYE can be heard on the recorded audio from the Deputy's dash camera saying, "Please Jehovah, I'll never do this again," "my life is over," and repeatedly saying "I'm done…I'm done."

27.     Based on these facts, there is probable cause to believe that TYE committed violations of 21 U.S.C. § 841, possession of methamphetamine and cocaine with intent to distribute, and 21 U.S.C. § 846, drug conspiracy.

28.     The Device was seized from TYE during his arrest.  The Device is currently located in secure evidence storage at the Homeland Security Investigations office, 3625 NW 56th St., Oklahoma City, OK 73112.  In my training and experience, I know that the Device has been stored in a manner in which its contents are (to the extent material to this investigation) in substantially the same state as they were when the Device first came into the possession of investigators.

29.     Based on my training, experience, and research, I know that the Device is a wireless telephone.  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;"

sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

30. From my training and experience, I know that possession of drugs with the intent to distribute are conspiratorial crimes. Individuals who engage in these crimes typically do so in groups with the assistance of others. These criminals often use their cell phones to communicate with other members of the drug trafficking organization. Records of these communications and the contact information of the smugglers are often saved in the individual's phone. Having access to the Device's contents may allow investigators to understand who organizes this drug trafficking, and whether TYE is involved in a wider conspiracy.

31. An examination can reveal the approximate location of the Device and the user by associating a specific date and time with: historical GPS data, historical cell-site data, and logs of Wi-Fi networks. Additionally, an examination can reveal the Device's unique identifiers (phone number, IMEI, IMSI, etc.). These unique identifiers can be used to compel material records from the cell phone service provider such as call logs, billing information, and historical cell-site data.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

33. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when it was used. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a

9

dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34. Furthermore, I know that when an individual uses an electronic device, it can serve both as an instrumentality for committing the crime (such as contacting sources of drugs to make arrangements for picking up drugs or dropping off payments, or vice versa), and also as a storage medium for evidence of the crime.

35. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

36. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

37. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Cristina Busbee*
CRISTINA BUSBEE
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on **Dec 6, 2021**

*Shon T. Erwin*
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a black Samsung cellular phone with SIM Card number 8901260075959160993, hereinafter the "Device." The Device is currently located in secure evidence storage at the Homeland Security Investigations` property room. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**Black Samsung cellular phone** with SIM Card Number 8901260075959160993:



## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. § 841 and 846 involving TYE, including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs smuggled or trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording TYE's schedule or travel;

    e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.